UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CHRISTIAN HARRIS,<br><br>Defendant. | CRIMINAL ACTION NO.<br>1:23-CR-00403-JPB |

# **ORDER**

This matter is before the Court on the Magistrate Judge's Report and Recommendation [Doc. 113]. This Court finds as follows:

## **BACKGROUND**

The United States of America indicted Victor Maldonado and Charles Carter on December 12, 2023. [Doc. 20]. On May 15, 2024, the United States filed a First Superseding Indictment adding Christian Harris ("Defendant") as an additional defendant. [Doc. 42]. Defendant is charged with conspiracy to distribute at least 500 grams of methamphetamine, possession with intent to distribute at least 500 grams of methamphetamine and assault on a federal law enforcement officer.

At a pretrial proceeding on March 27, 2025, Defendant orally moved to suppress an out-of-court identification that occurred on November 16, 2023.[1] A suppression hearing was held on July 2, 2025. The evidence presented at that hearing showed that on November 16, 2023, law enforcement conducted a controlled delivery of a tractor-trailer that contained a large quantity of methamphetamine. [Doc. 105, p. 39]. As part of this controlled delivery, Homeland Security Task Force Officer David Schweizer was assigned to surveil the warehouse where the delivery would occur. Id. at 40. Schweizer arrived in the area of the warehouse at 2:50 PM and positioned himself in a Pep Boys parking lot. Id. a 40–41. While Schweizer could not see the actual warehouse from this position, he could see an AutoZone and the entrance to the road leading to the warehouse. Id. at 57.

Around 7:30 PM, while it was still "pretty light" outside, Schweizer saw a white Porsche pull into the AutoZone parking lot. Id. at 43–44. The Porsche captured Schweizer's attention because it was a sports car,[2] parked in an area

---

[1] Defendant also moved to suppress an identification that occurred on March 25, 2025, and asked that any in-court identification be suppressed. Those issues, however, will be addressed closer to trial.

[2] According to Schweizer, most of the other vehicles in the area were trucks.

separate from where customers normally parked when entering the store and no one immediately got out of the vehicle. Id.

About five minutes after the Porsche parked at the AutoZone, Schweizer saw a "Black male get out of the passenger seat and walk towards the front entrance of the store" (hereinafter, "the Passenger"). Id. at 44. It took less than one minute for the Passenger to reach the front of the store. Id. at 47. During this period of time, Schweizer was about fifty yards away and never saw the Passenger's face. Id. He did, however, see the Passenger's profile. Id. Once the Passenger entered the store, Schweizer's view of him was obscured because "obviously there's a bunch of signs on the door." Id. Indeed, Schweizer explained that he could not get a clear view of the Passenger's face through the windows. Id. Less than a minute later, the Passenger and a Hispanic male exited the AutoZone. Id. at 48. As they walked back towards the Porsche, Schweizer again never saw the Passenger's face. Id. at 49. Instead, with a pair of binoculars, he viewed the Passenger for approximately "one second or so" from the side before the Passenger got back inside the Porsche. Id. The Porsche was later seen fleeing the scene of the controlled delivery.

Approximately three hours later, law enforcement officers learned that Defendant was the registered owner of the Porsche. Id. at 57, 65. After this

discovery, a supervisor sent a single picture of Defendant to a group chat.[3] Id. at 61–62. Schweizer, who was a member of the group chat, testified that after viewing the picture on his phone, he was able to identify Defendant, with "pretty high" certainty, as the Passenger. Id. at 64–65.

As stated previously, Defendant moved to suppress this identification. On May 11, 2026, the Magistrate Judge issued a Report and Recommendation wherein he recommended granting Defendant's motion. [Doc. 113]. The United States filed objections on May 21, 2026.[4] [Doc. 115]. This matter is now ripe for review.

## LEGAL STANDARD

A district judge has broad discretion to accept, reject or modify a magistrate judge's proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 680 (1980). Pursuant to 28 U.S.C. § 636(b)(1), courts review any portion of a report and recommendation subject to a proper objection on a *de novo* basis and any non-objected-to portion under a "clearly erroneous" standard.

Notably, a party objecting to a recommendation "must specifically identify those findings objected to," and "[f]rivolous, conclusive, or general objections

[3] The group chat was created as a way for the officers involved in the controlled delivery to communicate with each other.

[4] The Court notes that the objections are largely copied and pasted line-by-line with only minor alterations from what was submitted to the Magistrate Judge.

need not be considered by the district court." Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988). Placing this burden on the objecting party "facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009).

## ANALYSIS

To determine whether an out-of-court identification is admissible, courts use a two-step test. First, a court must decide "whether the original identification procedure was unduly suggestive." United States v. Daniels, 97 F.4th 800, 809 (11th Cir. 2024) (citation modified). If the procedure was unduly suggestive, as it was in this case,[5] a court must then ask "whether, under the totality of the circumstances, the identification was nonetheless reliable." Id. (citation modified). If the identification was reliable, suppression is not appropriate. Reliability is determined by analyzing "(1) the witness's opportunity to view the accused; (2) the witness's degree of attention; (3) the accuracy of the witness's description; (4) the witness's level of certainty; and (5) the length of time between the crime and the identification." Id.

[5] The parties agree that the procedure, where only one photograph was shown to the witness, was unduly suggestive.

The Magistrate Judge determined that, after analyzing each of the above factors, the identification was not reliable under the totality of the circumstances. The United States contends that this was error because: (1) the Magistrate Judge did not give sufficient weight to the opportunity to view factor; (2) the Magistrate Judge incorrectly applied the degree of attention factor; (3) the Magistrate Judge did not appropriately weigh the accuracy of the description; and (4) the Magistrate Judge should have weighed the level of certainty more heavily. Each objection is discussed below.

**1) Opportunity to View Factor**

The first factor that courts should consider in deciding whether an identification is reliable is the witness's opportunity to view the suspect. While recognizing that it was "pretty light" outside and that Schweizer's view was largely unobstructed, the Magistrate Judge nevertheless determined that this factor weighs against reliability because Schweizer's observations "consisted primarily of profile views from a distance of roughly 50 yards." [Doc. 113, pp. 7–8]. Indeed, the Magistrate Juge noted that Schwizer admitted that he never obtained a full-frontal view of the Passenger's face. Id. at 8.

The Government argues that the Magistrate Judge erred by concluding

that this factor should weigh against reliability. Specifically, the Government contends that Schweizer had "an excellent opportunity to view" Defendant and that the Magistrate Judge too heavily weighed Schweizer's "lack of physical interaction" with Defendant. [Doc. 115, pp. 4–5].

The Magistrate Judge appropriately weighed the first factor against a finding of reliability. The undisputed evidence demonstrated that Schweizer was never really close to the Passenger, which would have made the identification more reliable. Instead, he was about fifty yards away. Moreover, it is uncontroverted that Schweizer, at no point, had an unobstructed view of the front of the Passenger's face. Thus, to the extent that the United States argues that the Magistrate Judge erred in his analysis of this factor, the objection is **OVERRULED**.

**2) <u>Degree of Attention</u>**

The second factor in determining whether an identification is reliable is the witness's degree of attention at the time of the identification. In analyzing this factor, the Magistrate Judge noted that Schweizer's degree of attention was "meaningful" because he was trained to conduct surveillance and testified that he was totally focused on the Porsche and its occupants. The Magistrate Judge, however, only weighed the factor slightly in favor of reliability because Schweizer

only documented that he observed a "Black male" with no corresponding details like height, weight, clothing, hair or facial features.

In its second objection, the United States claims that the Magistrate Judge incorrectly applied this factor "because [t]he absence of a detailed report is completely irrelevant to this analysis and has no bearing on Schweizer's degree of attention on the scene." Id. at 5. According to the United States, this factor should "weigh heavily, not just slightly" in favor of reliability.

The Court agrees with the objection, at least in part. In the Court's view, instead of this factor weighing slightly in favor of the United States, it should weigh in favor of the United States. The undisputed evidence showed that Schweizer was an experienced surveillance officer and maintained "direct visual attention" on the Passenger as he walked to the store and then returned to the vehicle. Given Schweizer's focus on the Passenger, the second objection is **SUSTAINED IN PART** and **OVERRULED IN PART**.[6]

**3) Accuracy of the Description**

In analyzing whether an identification is reliable, courts are also instructed to consider the accuracy of the witness's prior description of the suspect. Because

[6] Even though the Court puts more weight on this factor that the Magistrate Judge did, the ultimate outcome remains unchanged given Schweizer's significantly limited ability to view the Passenger.

Schweizer, at the time of the original identification, merely described the Passenger as a "Black male," the Magistrate Judge determined that this factor weighs against reliability.

In its third objection, the United States contends that the Magistrate Judge did not appropriately weigh this factor because "Schweizer provided a reasonably specific description" when he testified at the suppression hearing that the Passenger was a "Black male, medium height and heavyset." Id. at 5–6. Problematically for the United States, it fails to specify why it believes the Magistrate Judge should have given this description, provided years after Schweizer's initial observation and after Schweizer had viewed multiple photos of Defendant, any weight. Indeed, the relevant inquiry is the accuracy of the witness's "prior description" of the individual—not the accuracy of the description at the time the identification is being challenged. United States v. Jean, 315 F. App'x 907, 912 (11th Cir. 2009). Given that the only contemporaneous description of the Passenger was "Black male," this Court finds that the Magistrate Judge did not err in weighing this factor against a finding of reliability. The objection is therefore **OVERRULED**.

**4) Level of Certainty**

Courts should also consider a witness's level of certainty in identifying a suspect when analyzing whether an identification is reliable. In this case, the Magistrate Judge determined that this factor weighs in favor of reliability because Schweizer testified that his degree of confidence in the identification was "pretty high." [Doc. 113, p. 12]. In its final objection, the United States asserts that the factor should have been weighed more heavily in favor of reliability. The Court disagrees. Based on the testimony presented at the suppression hearing, the Court is satisfied that the Magistrate Judge appropriately weighed this factor in favor of the United States.[7] The objection is thus **OVERRULED**.

***

In sum, the opportunity to view factor and the accuracy of the prior description factor weigh against a finding of reliability while the remaining factors weigh in favor of reliability.[8] After examining the totality of the circumstances, the Court agrees with the Magistrate Judge that Schweizer's identification of

[7] The United States presented no compelling authority or reasons as to why the factor should be given "heavy" weight.

[8] This Court agrees with the Magistrate Judge's finding, which neither party contests, that the three hours between Schweizer observing the Passenger and identifying Defendant was short enough for the length of time factor to weigh in favor of reliability.

Defendant was not reliable because Schweizer, who was fifty yards away from the Passenger, never obtained a frontal view of the Passenger's face and there is no record evidence showing that Schweizer noted anything about the Passenger besides his race.

## CONCLUSION

For the reasons stated above, the Report and Recommendation [Doc. 113] is **ADOPTED** as the order of the Court. Defendant's Oral Motion to Suppress is **GRANTED**, and Schweizer's November 16, 2023 out-of-court identification is **SUPPRESSED**.

Defendant is hereby **ORDERED** to notify the Court within fifteen days of the entry of this Order as to whether he will proceed to trial or enter a guilty plea. The Clerk is **DIRECTED** to submit this order at the end of the applicable time period or when a written response is filed, whichever is earlier. It is further **ORDERED** that the time between the date of this order and when the Clerk resubmits this order for review shall be excluded from the Speedy Trial Act calculations. The Court finds that the delay is for good cause and the interests of

justice outweigh the right of the public and the right of Defendant to a speedy trial, pursuant to 18 U.S.C. § 3161(h)(7)(A).

**SO ORDERED** this 27th day of August, 2026.

**J. P. BOULEE**
United States District Judge